IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| KEITH E. MACKABEE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-1199-CBD |
| ) | |
| MICHAEL ASTRUE ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiff brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and Supplemental Social Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Before the Court are Brief Of Appellant (ECF No. 12) ("Plaintiff's Brief") and Defendant's Motion For Summary Judgment (ECF No. 23) (the "Commissioner's Motion"). The Court has reviewed these pleadings and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby GRANTS the Commissioner's Motion.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for DIB on March 3, 2009, and an application for SSI on March 16, 2009, alleging disability from February 8, 2008. R. 15; Pl.'s Br. 4. The claims were denied initially on April 29, 2009, and upon reconsideration on August 31, 2009. R. 15; Pl.'s Br. 4. Plaintiff then requested a hearing, and on February 25, 2010, Plaintiff testified by video at a hearing before an Administrative Law Judge ("ALJ"). R. 31. On June 22, 2010, the ALJ issued a written decision concluding that Plaintiff was not disabled under the Social Security Act from February 8, 2008, through the date of the decision. R. 24.

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a), and further explained below. *See infra* Standard of Review. At the first step, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 8, 2008, the alleged onset date." R. 17. At the second step, the ALJ determined that Plaintiff had severe impairments, including "thoracic aorta/aortic dissection; hypertension and degenerative disc disease of the lumbar spine." *Id*. At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id*. at 19. At the fourth step, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could never climb a ladder, rope or scaffold and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl," and that Plaintiff "is unable to perform any past relevant work." *Id*. at 19, 22. At the fifth step, the ALJ determined, after "[c]onsidering . . . [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that

exist in significant numbers in the national economy that . . . [Plaintiff] can perform." *Id*. at 23. As a result, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 8, 2008, through the date of this decision," June 22, 2010. *Id*. at 24.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council. *Id*. at 9-11. The Appeals Council denied Plaintiff's request on March 4, 2011, making the ALJ's decision final and appealable. *Id*. at 1-3.

## **STANDARD OF REVIEW**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405(g). The Court must affirm the ALJ's decision if it is supported by substantial evidence, and the ALJ applied the correct law. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted)).

The Court does not review the evidence presented below *de novo*, nor does the Court

"determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345 ("We do not conduct a *de novo* review of the evidence."). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If an ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

A person is deemed legally disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

> 1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is doing such activity, he is not disabled.
>
> 2) If he is not doing such activity, determine whether he has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." *Id*. § 404.1520(a)(4)(ii). If he does not have such impairment or combination of impairments, he is not disabled.
>
> 3) If he does have such impairment or combination of impairments, determine whether he has "an impairment(s) that meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." *Id*. § 404.1520(a)(4)(iii). If he does have such impairment, he is disabled.
>
> 4) If he does not, considering his residual functional capacity, determine whether he can do his "past relevant work." *Id*. § 404.1520(a)(4)(iv). If he can do such work, he is not disabled.

> 5) If he cannot do such work, considering his residual functional capacity, age, education, and work experience, determine whether he can perform other work. *Id*. § 404.1520(a)(4)(v). If he cannot perform other work, he is disabled. If he can perform other work, determine whether the other work exists in the national economy, given the claimant's residual functional capacity, age, education, and work experience. *Id*. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

Plaintiff has the burden to prove that he is disabled at steps one through four, and the Commissioner has the burden to prove that "other work is available in the national economy which the claimant could perform." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## **ANALYSIS**

On appeal, Plaintiff argues that the Court should reverse the ALJ's decision and remand the case for further proceedings for five reasons:

1) The ALJ incorrectly weighed the medical opinion of James Todd, M.D.;

2) The ALJ improperly assessed Plaintiff's credibility;

3) The ALJ failed to provide Plaintiff with a "full and fair hearing;"

4) The ALJ failed to consider Plaintiff's medications and club foot; and

5) This action qualifies for a sentence six remand.

For the reasons set forth below, the Court affirms the decision of the ALJ.

**I.  Although The ALJ Improperly Weighed The Medical Opinion Of Dr. Todd, The ALJ's Decision Is Supported By Substantial Evidence.**

Plaintiff argues that the ALJ erred in awarding Dr. Todd's opinion only "great weight," rather than controlling weight, and the State agency consultants' opinions "greater weight." Pl.'s Br. 7-10.  The Court accords a treating physician's opinion "controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record." *Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d) (both stating, "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight"); *Johnson v. Barnhart*, 434 F.3d 650, 656-57 (4th Cir. 2005) (holding that substantial evidence supports the ALJ's decision to rely on the opinions of a non-treating internist because his opinions were consistent with opinions of plaintiff's treating physicians and medical tests performed, and the physician "thoroughly reviewed [the plaintiff's] medical records").  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

The "ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). If the ALJ does not award a medical opinion controlling weight, the ALJ considers the following to determine the amount of weight to award the opinion: (1) whether the source examined the claimant; (2) the treatment relationship, including the length of the relationship, the frequency of examination, and the nature and extent of the treatment relationship; (3) the extent to which

evidence supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the source is a specialist in the area on which he or she is opining; and (6) other factors raised by the claimant which support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Importantly, although the ALJ will look to medical sources for opinions on the nature and severity of a claimant's impairment, the ALJ will not consider opinions that a claimant is disabled or unable to work as "medical opinions" – those opinions are "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. §§ 404.1527(e) and 416.927(e). The ALJ "will not give any special significance to the source of an opinion on [these] issues reserved to the Commissioner." *Id*. §§ 404.1527(e)(3) and 416.927(e)(3).

In this case, the ALJ determined that Dr. Todd's opinion that Plaintiff "has a chronic disability is correct." R. 22. However, because of the evidence in the record and because Dr. Todd did not "provide any limitations on the claimant's ability to work given his condition," the ALJ concluded that "Dr. Todd's statement does not equate to a finding of total disability on the part of the claimant." *Id*. The ALJ found that the evidence supported a finding that the claimant can perform light work, as opined by the State agency consultants. *Id*. Thus, the ALJ assigned their opinions greater weight. *See id*.

The ALJ should have awarded Dr. Todd's opinion controlling weight. The ALJ did not provide a reason for not awarding Dr. Todd's opinion controlling weight. In fact, the ALJ noted that she agreed with Dr. Todd's opinion that Plaintiff has a chronic disability, and only disagreed with Plaintiff's interpretation that this opinion results in a finding that Plaintiff is completely disabled. *See id*. ("the undersigned finds that the opinion of Dr. Todd that the claimant has a

chronic disability is correct, but that Dr. Todd's statement does not equate to a finding of total disability on the part of the claimant"). The ALJ and the record indicate that Dr. Todd's opinion is "well-supported by medically acceptable clinical evidence and . . . [not] inconsistent with other substantial evidence," and, accordingly, should have been awarded controlling weight.[1] *Thompson*, 442 F. App'x at 808 (citations omitted).

Unfortunately, however, this error does not alter the outcome for Plaintiff. As the ALJ notes, "[j]ust because his condition is a chronic disability does not mean that it makes the claimant totally disabled and unable to work in any capacity." *Id*. at 22 (citation omitted). Here, substantial evidence supports the ALJ's decision that despite Plaintiff's chronic disability, he is not totally disabled. For one, as the ALJ points out, Dr. Todd did not note any limitations on Plaintiff's ability to work, and Plaintiff did in fact work for a number of years despite his condition, performing "medium or heavier work." *Id*. Additionally, Plaintiff continued to look for work through 2009 after being laid off in 2008. *Id*. The ALJ also notes that Plaintiff is "asymptomatic from his aortic dissection with only a slight increase in size on CT scan over the course of four years." *Id*.

Other facts in the record support the ALJ's conclusion that Plaintiff is not completely disabled. Plaintiff admits in his Disability Report that his "illnesses, injuries, or conditions" did not cause him to work fewer hours or change his job duties. *Id*. at 136. In explaining why they caused him to "make any job-related changes such as [his] attendance, help needed, or employers," he only stated "hospital visit for pain." *Id*. Further, although Plaintiff reported that

---

[1] The ALJ also provides that if Dr. Todd's opinion could be "interpreted as a statement of total disability," that statement "is not supported by the objective evidence of record regarding the stability of his disease." R. 22 (citations omitted). The Court does not find such an interpretation to be credible. However, if Dr. Todd's opinion were so interpreted, the Court finds substantial evidence supports the ALJ's decision to decline to award controlling weight to that opinion because it would be inconsistent with other substantial evidence, as explained herein.

his "illnesses, injuries, or conditions" allegedly first interfered with his work in 2005, he worked until February 2008. *Id*. Additionally, Dr. Todd noted on June 7, 2006, that Plaintiff's CT scan "looks good," and his blood pressure was "getting better." *Id*. at 203. On October 5, 2007, Jeffrey Wieland, M.D., Plaintiff's cardiologist, noted that Plaintiff "is generally feeling well [and] . . . . denies associated chest pain, shortness of breath, dyspnea on exertion, orthopnea, dependent edema, PND, diaphoresis, palpitations, syncope, and claudication." *Id*. at 277. He also noted, "Overall, [Plaintiff] appears to be doing fairly well." *Id*. at 278. Dr. Wieland provided similar findings on April 10, 2007, and April 3, 2008. *Id*. at 222-23, 284-85. On April 3, 2009, Dr. Wieland wrote that Plaintiff's aneurysm and thoracic aorta "condition is stable," as well as his hypertension. *Id*. at 305.

Plaintiff also admitted at the hearing before the ALJ that he drives; only has back pain once a day; can lift 20 pounds; can kneel and squat; has no problem with memory or concentration; can "care for [his] hygiene, shower, brush [his] teeth, comb hair . . . . get dressed; prepares his own meals; "do[es] all [of his] chores;" can do laundry; can use a broom, vacuum, and mop; runs errands such as grocery shopping; and dines out at restaurants. *Id*. at 39, 46, 50-52. What is more, the State's two agency consultants found that Plaintiff could perform a "reduced range of light work," which is supported by the evidence noted above, and so deserving of great weight. *See id*. at 22, 318-25, 330-37. Thus, even if Dr. Todd's opinion is awarded controlling weight, substantial evidence supports the ALJ's decision that Plaintiff is not completely disabled and can perform a reduced range of light work.

**II.  The ALJ Properly Assessed Plaintiff's Credibility.**

Plaintiff argues that the "ALJ improperly assessed [Plaintiff's] credibility." Pl.'s Br. 10. As noted previously, the Court does not review the ALJ's decision *de novo*, and the ALJ, not the Court, bears the responsibility to make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456.  The ALJ's decision that Plaintiff was not credible is one such factual conclusion properly reached by the ALJ after resolving factual disputes.

However, in rendering a credibility determination, the ALJ must base her determination on "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  The ALJ's observations and determinations regarding credibility are given great weight because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant."  *Shively*, 739 F.2d at 989 (citation omitted).

In this case, the ALJ found,

> [a]fter careful consideration of the evidence, . . . that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 21.  The ALJ supported this conclusion by describing the medical evidence that shows that Plaintiff's impairments are not completely disabling, as determined in the residual functional capacity assessment.  *See id.* at 21-22.  For example, the ALJ noted that although Plaintiff complains of lower back pain, according to the evidence presented, his last treatment for this pain was surgery in 2001, and Plaintiff worked for nearly seven years "performing at least

10

medium work (very heavy as he described it) without difficulty" after that surgery. *Id*. at 21. The ALJ also recognized that Plaintiff "testified that his pain level on an average day was 5/10 which is not consistent with disabling pain." *Id*. Further, Plaintiff complained of "having problems with a club foot." *Id*. Yet, the evidence did not show that he is limited by his club foot, and instead shows that he "worked his whole life with the club foot, which he said he had surgery on when he was three, without difficulty." *Id*. Additionally, as noted above, the ALJ explained that the evidence shows that Plaintiff's aortic dissection with claudication is a chronic condition; but does not render him completely disabled. *See id*. at 21-22. The ALJ's analysis shows that her decision is supported by substantial evidence.

Plaintiff argues that the ALJ's assessment was improper "[b]ecause of the ALJ's erroneous assignment of weight to the medical opinions of Dr. Todd (stating that [Plaintiff] had limited ambulation) versus the State consultants' [opinions] (indicating that [Plaintiff] was able to walk and sit etc for 6 hours." Pl.'s Br. 10-11. The Court disagrees. First, even though the ALJ failed to properly assign controlling weight to Dr. Todd's opinion that Plaintiff had a chronic condition, this error does not invalidate the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his conditions were not credible. As shown above, the ALJ's decision was supported by substantial evidence. Further, Plaintiff has not shown that Dr. Todd's statement that Plaintiff had "limited ambulation" conflicts with the State consultants' statements "indicating that [Plaintiff] was able to walk and sit etc for 6 hours," Pl.'s Br. 11, particularly given that Plaintiff claimed to have walked, stood, sat, climbed, knelt, crouched, and crawled for *eight* hours each day in his prior employment, *see* R. 137.

Plaintiff also contends that the ALJ "failed to adequately take into account all the

requisite factors necessary for a fair analysis of credibility" based on "the ALJ's dismissiveness at the hearing regarding [Plaintiff's] medication list in conjunction with only vague mention of his taking aspirin and 'fluid pills,' and the out right [sic] incorrect statement regarding evidence of [Plaintiff's] club foot." Pl.'s Br. 11. The Court, again, disagrees. The ALJ did not "dismiss" Plaintiff's medication list – when she realized that she did not have a copy of Plaintiff's medications list, she asked Plaintiff to send it to her after the hearing. *See* R. 42-43; 54-55. Thereafter, in her opinion, the ALJ referenced Plaintiff's medications, showing that she considered them in reaching her decision. *See, e.g.*, R. 20.

Further, the ALJ's failure to mention that Plaintiff's physician "noted 'previous surgery is remarkable for surgical repair of a club foot on the left,'" Pl.'s Br. 12-13; *see also* R. 250, does not invalidate the ALJ's conclusion that Plaintiff has not provided any evidence to "support limitations from this problem," R. 21. The ALJ recognizes that Plaintiff had surgery on the club foot when he was three years old, and then proceeded to work until a few years ago. *Id*. The ALJ may have misstated that "there is no evidence of the existence of a club foot contained in the medical evidence of record," *id*., but the ALJ did recognize this past condition, and correctly did not find it disabling today when Plaintiff presented no medical evidence that it currently impacts his ability to work. Thus, the Court rejects the claim that the ALJ improperly assessed Plaintiff's credibility.

### III. The ALJ Provided Plaintiff With A "Full And Fair Hearing."

Plaintiff next argues that because the ALJ "was rushed for time and [was] unable to locate evidence previously submitted to her, . . . she failed to address the effects of Claimant's medications and provide a full and fair hearing." Pl.'s Br. 11. "Claimants in disability cases are entitled to a full and fair hearing of their claims, and the failure to have such a hearing may

constitute good cause sufficient to remand to the Secretary . . . for the taking of additional evidence." *Sims v. Harris*, 631 F.2d 26, 27 (4th Cir. 1980) (citations omitted).  If a claimant "complains that a hearing conducted by an ALJ was not full and fair '[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.''" *Jones v. Astrue*, No. CBD-09-2314, 2010 WL 4923294, at *11 (D. Md. Nov. 29, 2010) (alteration in original) (quoting *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997)). If the ALJ's "decision 'might reasonably have been different had (that) evidence been before (her) when (her) decision was rendered,'" then the case may be remanded.  *Sims*, 631 F.2d at 28 (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Here, Plaintiff obtained a full and fair hearing because Plaintiff has not shown an evidentiary gap or that a remand to take new evidence would affect the ALJ's decision. Plaintiff's claim that the ALJ "was rushed for time" and could not "locate evidence previously submitted to her" does not convince the court that Plaintiff was not given a full and fair hearing. The transcript does not indicate that Plaintiff was unable to present all of the evidence that he wished to present.  *See, e.g.*, R. 54 (ALJ inquires whether counsel would like to question Plaintiff); 57 (after questioning Plaintiff, counsel notes, "I think that's all I have, your honor"); 61 (ALJ inquires whether Plaintiff would like to question the vocational expert, and Plaintiff then does so).  Even if the four pieces of paper to which Plaintiff refers in his brief were not "readily accessible" to the ALJ during the hearing, Plaintiff had the opportunity to present that evidence at the hearing, and does not claim that the ALJ did not have the papers when she rendered her decision.  Further, as discussed above, the ALJ addressed Plaintiff's medications in her decision.  Thus, the ALJ's decision would not have differed had the ALJ had these documents at the hearing, and the Court will not remand the case so that the ALJ can retake that

same evidence.

## IV.  The ALJ Properly Addressed Plaintiff's Medications And Medical Conditions.

Plaintiff argues that because of "the lack of analysis of [Plaintiff's] medications, and . . . the ALJ was unfamiliar with the record to such a degree that she missed evidence regarding [Plaintiff's] club foot, . . . the record was not full developed."  Pl.'s Br. 13.  First, the ALJ did address Plaintiff's medications.  At the hearing, the ALJ asked about Plaintiff's medications and expressly inquired whether he "get[s] any negative effects from [his] medications."  *See, e.g.*, R. 44, 46, 49.  The ALJ noted in her decision various medications that Plaintiff was taking and mentioned that Plaintiff was experiencing fatigue due to his medications.  *Id.* at 20.

Second, the ALJ considered all of Plaintiff's medical conditions, including his club foot.  As explained above, although the ALJ misstated that the record did not reflect evidence of club foot, she clearly considered this condition, and substantial evidence supports her decision that the condition does not disable Plaintiff because Plaintiff did not present medical evidence that it currently limits his ability to work.  The medical evidence only stated that Plaintiff had an operation on his club foot, *see id.* at 250, and Plaintiff testified that this operation occurred when he was three years old, *id.* at 47.  The ALJ also inquired about Plaintiff's club foot during the hearing.  *Id*.  The ALJ did consider all of Plaintiff's impairments and medications – she simply did not find their combined limitations disabling.

## V.  The Court Will Not Remand This Action Under 42 U.S.C. § 405(g).

Plaintiff argues that the Court should remand this action pursuant to the sixth sentence of 42 U.S.C. § 405(g).  Pl.'s Br. 13-14.  That sentence reads,

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social

> Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).  In essence, courts issue a remand under this sentence when "new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (citation omitted).  The Fourth Circuit has developed a four-part test to determine whether to remand a case: a case may be remanded if

> (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.

*Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010) (quoting *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)); *see also Miller v. Barnhart*, 64 F. App'x 858, 859-60 (4th Cir. 2003) (listing the four factors).  As noted in the statute, the plaintiff must show "'good cause' for the failure to present the additional evidence in the prior proceeding." *Melkonyan*, 501 U.S. at 99.

The Court does not find a sentence six remand to be appropriate here.  Plaintiff presents

as "new evidence" a letter from Dr. Todd. Pl.'s Br. 14; Pl.'s Response 7, Ex. 1. First, the letter is undated, and so the Court cannot determine whether it was in fact written in 2011 and was unavailable when the claim was before the ALJ, as claimed by Plaintiff's counsel. *See* Pl.'s Br. 14. Plaintiff should have submitted affidavits averring when this letter was written, who provided it to Plaintiff or his counsel, and when it was provided to Plaintiff or his counsel.

Second, if the letter was written in 2011, the Court agrees with the Commissioner that the letter would not have changed the ALJ's decision. *See* Mem. in Supp. of Commissioner's Mot. 18. Dr. Todd notes in the letter that Plaintiff's descending aortic dissection "has now been further complicated by his recent ascending aortic dissection." Pl.'s Response Ex. 1. However, the doctor continues to state that the "ascending component has been repaired successfully and this will unlikely cause any more problems." *Id.*

Further, Dr. Todd's opinions on the descending component reflect a new, worsened condition, rather than provide additional evidence of Plaintiff's condition at the time of the ALJ's decision. *Id.* ("The descending . . . is now at a worsened state."). Plaintiff is free to apply for disability benefits regarding this new condition, but the Court cannot remand this decision to require the ALJ to evaluate a condition occurring after Plaintiff had filed his application and the ALJ ruled on that application. Sentence six remands are only appropriate when the new evidence relates to the condition ruled upon by the ALJ, not new conditions. *See Miller*, 64 F. App'x at 1-2; *Ashton*, 2010 WL 3199345, at *4.

Furthermore, Plaintiff has not established good cause for his failure to submit the letter at the prior proceeding. Plaintiff only claims that the letter was unavailable due to Plaintiff's alleged "catastrophic health crisis in February of 2011." Pl.'s Br. 14; *see also* Pl.'s Response 8 ("As the letter was not received by Plaintiff's counsel in time to submit to ALJ Showalter at the

hearing, there existed good cause for not submitting the evidence."). This argument is insufficient. For one, Plaintiff does not explain why this crisis caused the letter to be unavailable in the 2010 proceeding. Plaintiff has not shown good cause for his failure to provide this additional evidence to the ALJ, and so a sentence six remand is inappropriate in this case.

## **CONCLUSION**

Based on the foregoing, the Court GRANTS the Commissioner's Motion.


September 25, 2012 /s/
Charles B. Day
United States Magistrate Judge


CBD/mkh/me